UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IRENE REESE,

    Plaintiff,

v.                                                Case No: 2:13-cv-174-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY[1],

    Defendant.

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on March 7, 2013. Plaintiff, Irene Reese, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits and Supplemental Security Income disability benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

**B. Procedural History**

On January 11, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Plaintiff asserted a disability onset date of March 12, 2009. On April 27, 2010, the Commissioner denied the applications initially, and denied the application upon reconsideration on November 4, 2010. A hearing was held before Administrative Law Judge Elliott Bunce (the "ALJ") on November 7, 2011. The ALJ issued an unfavorable decision on December 7, 2011. Plaintiff filed the instant action in federal court on December 15, 2011.

**C. Summary of the ALJ's Decision**

The ALJ found Plaintiff met the Social Security Act's insured status requirements through December 13, 2013. (Tr. p. 16). At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 12, 2009. (Tr. p. 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "asthma, diabetes, degenerative disc disease of the lumbar spine, obesity, [and] adjustment disorder with anxiety" (20 CFR 404.1520(c)). (Tr. p. 16). The impairments are categorized as "severe" "because they impose more than minimal limitations on the claimant's ability to perform basic work activities." (Tr. p. 16).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 16). As to the claimant's asthma, the specific findings required by the criteria of listed impairment 3.03, Asthma, Appendix I, were not found in the record by the ALJ. (Tr. p. 16). As to the claimant's diabetes and degenerative disc disease of the lumbar spine, the ALJ found that the medical records do not meet the level of severity required in §§ 9.00, Endocrine Disorders, and 1.00, Musculoskeletal System, Appendix 1. (Tr. p. 17). As to the claimant's obesity, the ALJ considered its effects in formulating the residual functional capacity. (Tr. p. 17). As to the claimant's mental impairment, the ALJ did not find specific evidence in the record of the symptoms required by part A of listing 12.06, Anxiety Related Disorders, Appendix 1. (Tr. p. 17).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform work that does not require: exertion above the light level; or any climbing or crawling; or exposure to poor ventilation or extremes of dust, humidity, or temperature; or any interaction with the public to perform job duties." (Tr. p. 18).

At step five, the ALJ determined that Plaintiff was not disabled, but is unable to perform any past relevant work. (Tr. p. 21-22). The ALJ observed that Plaintiff was a younger individual

on the alleged onset date, had at least a high school education, and can communicate in English. (Tr. p. 21). The ALJ also found that the transferability of job skill was not material and jobs exist in significant numbers in the national economy that Plaintiff can perform such as mail clerk, small products assembler, and electronics worker. (Tr. p. 21).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts

Plaintiff was born on February 4, 1960, and was 49 years old on the date of the hearing. (Tr. p. 48). Plaintiff lives with her husband, who receives Social Security disability income (Tr. p. 34-35), and her adult son. Plaintiff is trying to get her son Social Security Disability income because she alleges he is bipolar and has ADHD and ADD. (Tr. p. 35). Plaintiff's husband does all of the chores, including laundry, and she accompanies him to the grocery store. (Tr. p. 37-38).

Plaintiff is a high school graduate and participated in special education courses from first grade through twelve grade. (Tr. p. 35). Plaintiff claims a sixth or seventh grade reading level (Tr. p. 35), a first grade mathematics ability (Tr. p. 40), and holds a driver's license (Tr. p. 35).

Plaintiff was last employed for pay in 2008 when she worked for Youngblood Sanitation cleaning outdoor toilets. (Tr. p. 36). This employment ended because she could not get in and out of the trucks due to pain in her knees, back, and ankles. (Tr. p. 36). Plaintiff's work history revealed she worked many jobs for a day or a week. Plaintiff alleged that she would be fired because she had difficulties with concentration and math. (Tr. p. 40). Wal-Mart employed Plaintiff primarily to hang clothing; however, when the Plaintiff was assigned to work a cash register, Plaintiff had difficulty counting money and working with the public. (Tr. p. 41). McDonalds also fired Plaintiff because she could not use the cash register. (Tr. p. 42). After a bad accident that the Plaintiff admitted was her fault, the Plaintiff was fired from being a bus driver for the Lee County School Board. (Tr. p. 43).

Plaintiff alleged that she has been diagnosed with asthma. Her shortness of breath began in 2007 and she has been using an inhaler since that time. Plaintiff states that she has to have air

circulating around her (Tr. p. 45) and that smells from housecleaning products and perfumes cause her difficulty (Tr. p. 46).

Plaintiff alleges an ankle injury dating back to 1987 which is aggravated by weather changes. (Tr. p. 46) Her need to sit often caused problems in her various places of employment. (Tr. p. 46). Plaintiff attended the hearing with a cane; however, Plaintiff's doctor did not provide a prescription for the cane until after the hearing (Tr. p. 38, 519).

Plaintiff also alleges a left knee injury incurred during the school bus accident. (Tr. p. 47). Plaintiff stated that her knee is not a constant problem but is aggravated by weather changes and climbing stairs. (Tr. p. 47). The knee bothers Plaintiff about four separate times a year when the weather is changing and caused her to fall a couple of times in the last year. (Tr. p. 48). When asked whether her knee hurt, Plaintiff responded, "not as bad as my ankle and back." (Tr. p. 48).

Plaintiff had an MRI of her back in May of 2011. (Tr. p. 49-50). Upon review of the MRI, Dr. Hill who provides pain management treatment to the Plaintiff, stated that surgery would not be conducted for the Plaintiff. (Tr. p. 50).

Plaintiff's diabetes causes her not to be able to feel her toes. (Tr. p. 50-51). At times, Plaintiff experiences a severe burning sensation which she stated started six months prior to the hearing. Plaintiff stated that she has "been not sleeping good at all." (Tr. p. 51). When the Plaintiff complained to her doctor, the doctor prescribed Xanax to help her sleep. (Tr. p. 51).

Plaintiff was also concerned about pain in her left lung at the time of hearing and was evaluated for breast cancer prior to the hearing. (Tr. p. 50-51).

When asked about side effects from medication, the Plaintiff responded: "I have no side effects with them." (Tr. p. 38). Plaintiff stated that once in a while she experiences pain in her left knee, but that her medication helps with the pain. After that statement, the plaintiff added that

the medication "keeps me sleeping all the time." (Tr. p. 39). Plaintiff also alleged memory difficulties which result in arguments with her husband when he claims he told her something she does not recall hearing. (Tr. p. 39).

Plaintiff alleges she cannot lift any weight and that standing for periods longer than five or ten minutes causes back pain. (Tr. p. 39). Plaintiff alleges she can sit for twenty minutes before she needs to change position. (Tr. p. 40).

### B. Vocational Expert

A Vocational Expert, Dr. David Burnhill, testified at the hearing before the ALJ on January 5, 2012. Dr. Burnhill testified that Plaintiff's past relevant work was as a refractory worker which is a DOT code 861.687-010, SVP:4, skilled worker, and heavy work. (Tr. p. 68, 69).

The ALJ presented the following hypothetical to Dr. Burnhill:

> I would ask you to consider an individual of the claimant's age, education, and work history who's able to perform work at the light exertional level that does not require climbing or crawling and does not expose the worker to poor ventilation or extremes of dust, humidity or temperature. Would there be any unskilled, entry-level occupations that this person could perform and, if so, would you tell us what they are?

Dr. Burnhill responded as follows:

> Yes, Your Honor, such occupations would include, but not be limited to, mail clerk, 209.687-026, light, SVP 2. Within the Tri-County area of Lee, [Collier] and Sarasota, approximately 450, statewide 2,600, nationally in excess of 50,000. Small products assembly, 739.687-030, light, SVP 2, 450; 2,200, in excess of 100,000. Electronics worker, 726.687-010, light, SVP 2, 500; 2,000; in excess of 70,000. These are meant to be representative only, sir.

(Tr. p. 25-31).

### C. Analysis

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to properly evaluate Plaintiff's complaints of side effects from her medications. Plaintiff contends that the

medical record reflects that Plaintiff was prescribed narcotic pain medication including Roxicodone and Oxycodone and that these medications can reasonably cause symptoms of drowsiness or fatigue. (Doc. 23 p. 6-7). Plaintiff argues that the ALJ did not specifically address Plaintiff's complaints of drowsiness or fatigue, and thus, his decision is in error. (Doc. 23 p. 7).

The Commissioner responds that the burden of proving disability is on the claimant and that the claimant must provide sufficient medical evidence and other evidence about her condition to permit the Social Security Administration to reach conclusions about her impairment and its impact on her ability to work on a sustained basis. (Doc. 24 p. 3) The Commissioner argues that the ALJ did consider all of Plaintiff's symptoms as part of his RFC assessment, but found the intensity, persistence, and limiting effects of the symptoms alleged by Plaintiff to be not credible. (Doc. 24 p. 4-5). Commissioner argues that the medical record reflects no reports of side effects by Plaintiff or observations or concerns from Plaintiff's physicians that she experienced side effects. (Doc. 24 p. 7).

An ALJ has a duty to investigate the possible side effects of medications taken by a claimant. *Lipscomb v. Comm'r Soc. Sec.*, 199 F.App'x 903, 906 (11th Cir. 2006) (citing *Cowart v. Schweiker*, 662 F.2 731, 737 (11th Cir. 1981)). "In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv) and 416.929(c)(3)(iv)). Under certain circumstances, an ALJ's duty to develop a full record can include investigating the side effects of medications. *Id*. However, an ALJ is not required to inquire into details about side effects when a claimant is represented by counsel at a hearing. *Lipscomb*, 199 F.App'x at 906 (citing *Cherry v. Heckler*, 760 F.2d 1186,

1191 n. 7 (11th Cir. 1985)). The Eleventh Circuit held that an ALJ's determination that side effects from medication did not impair a plaintiff's ability to work was supported by substantial evidence when the plaintiff complained of only minimal side effects and the record did not disclose any concerns about side effects by the several doctors who examined and treated plaintiff. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).

In this case, the Court finds that the ALJ did not err by failing to evaluate Plaintiff's complaints of side effects from her medications. Plaintiff has simply failed to provide objective evidence demonstrating that the side effects from her medications cause her disabling limitations. During the hearing, Plaintiff did not testify that she was disabled due to the side effects of her medication, but instead premised her disability on ankle and back pain (Tr. p. 38), pain in her left knee (Tr. p. 39), lack of concentration, (Tr. p. 40), poor math skills (Tr. p. 41), asthma, COPD (Tr. p. 45), and diabetes neuropathy (Tr. p. 50). When Plaintiff was asked by the ALJ if she suffered from any side effects from her medications, Plaintiff's first response was "No, sir. I have no side effects with them." (Tr. p. 38). When the ALJ asked whether medications help with pain, Plaintiff responded "Yes sir, but it keeps me sleeping all the time." (Tr. p. 39). However, later in her testimony Plaintiff stated that "I've not been sleeping good at all. I told the doctor about it, so she put me on Xanax." (Tr. p. 51). Plaintiff's own testimony is in conflict as to whether she is sleeping all the time or is unable to sleep.

Plaintiff's medical records reflect no reports of side effects by Plaintiff or observations or concerns from Plaintiff's physicians that she experiences side effects from her medication. (Tr. p. 192, 436, 478, 480, 482, 484, 486, 488, 490). In addition, contrary to Plaintiff's complaint that her medications cause her to be sleepy, the medical evidence shows that Plaintiff actually complained of difficulty sleeping. For example, when asked how her conditions affect her sleep in

the Supplemental Pain Questionnaire dated February 4, 2010, Plaintiff responded: "Don't sleep lying down. Can't breath, nor sleep. Sleep an hour on and an hour off all night in Lazyboy chair for last 2 years." (Tr. p. 173). As to how her condition affects her sleeping, Plaintiff states in her Supplemental Pain Questionnaire dated June 20, 2010: "The pain wakes me up three to four times a night. So does my not being able to breath due to COPD." (Tr. p. 184). On March 12, 2010, Plaintiff told Psychologist Cheryl J. Kasprzak that "she sleeps 4-6 hours per night, naps 1 hour daily, reports she needs and does best on 4 hours worth of sleep and has had this pattern since age 28." (Tr. p. 323). In the Psychiatric Review Technique performed by Lauriann Sandrik, Psy.D. from April 26, 2010, Plaintiff reported poor sleep due to her physical condition. (Tr. p. 358). Plaintiff's descriptions of her sleeping patterns in her Supplemental Pain Questionnaires to Drs. Kasprzak and Sandrik, and in her testimony before the ALJ are vastly different. Plaintiff's own testimony is in conflict as to whether she is sleeping all the time or not able to sleep. Nothing in the record suggests she is unable to work because of drowsiness. Even if there is a side effect of drowsiness, the record does not indicate the severity to which the Plaintiff experiences the drowsiness.

In this case, Plaintiff did not carry her burden of proving that her side effects impair her or that the RFC adopted in this case is inappropriate. The record was devoid of objective evidence demonstrating problems caused by side effects from medication or complaints from the Plaintiff to her medical providers about medication side effects. The Court is in agreement with the Plaintiff that "the issue of side effects from medications was not extensively developed in the record or during the testimony." (Doc. 23 p. 7). The burden to bring those matters to the ALJ's attention rested on the Plaintiff and the Plaintiff failed to meet her burden.

### III. Conclusion

For the reasons stated above, it is hereby **ORDERED:**

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 22, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties